# United States Court of Appeals

*for the*

# Fifth Circuit

Case No. 26-10093

JONATHAN HARVEY,

*Plaintiff-Appellant,*

v.

LHOIST NORTH AMERICA OF TEXAS, L.L.C.,

*Defendant-Appellee.*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS

## BRIEF FOR PLAINTIFF-APPELLANT

BRIAN P. SANFORD
ELIZABETH J. SANFORD
EMMA HOFFMAN
SANFORD FIRM
*Attorneys for Plaintiff-Appellant*
2711 Hibernia Street
Dallas, Texas 75204
(214) 717-6653
bsanford@sanfordfirm.com
esanford@sanfordfirm.com
ehoffman@sanfordfirm.com

CP COUNSEL PRESS (800) 4-APPEAL • (815382)

## 1. CERTIFICATE OF INTERESTED PERSONS

The undersigned counsel of record certifies that the following listed persons and entities as described in the fourth sentence of 5th CIR Rule 28.2.1 have an interest in the outcome of this case. These representations are made in order that the judges of this court may evaluate possible disqualification or recusal.

| **Appellees:** | **Counsel for Appellees:** |
|---|---|
| Lhoist North America of Texas, L.L.C. | Talley Parker of Jackson Lewis, P.C. Dallas, TX |

| **Appellants:** | **Counsel for Appellants:** |
|---|---|
| Jonathan Harvey | Brian Sanford of Sanford Firm Dallas, TX |
| Jonathan Harvey | Elizabeth Sanford of Sanford Firm Dallas, TX |
| Jonathan Harvey | Emma Hoffman of Sanford Firm Dallas, TX |

*s/Brian P. Sanford*
Brian P. Sanford

## STATEMENT REGARDING ORAL ARGUMENT

This case presents important questions of discrimination comparators as to discipline histories for the time period that a plaintiff does not have a record of discipline, and of direct evidence of retaliatory motive. These and other issues in the case are appropriate for oral argument.

# TABLE OF CONTENTS

**Page**


CERTIFICATE OF INTERESTED PERSONS ....... i

STATEMENT REGARDING ORAL ARGUMENT ....... ii

TABLE OF AUTHORITIES ....... v

STATEMENT OF JURISDICTION ....... 1

STATEMENT OF THE ISSUES ....... 1

STATEMENT OF THE CASE ....... 2

- A. Factual Background ....... 2
- B. Procedural History ....... 7

SUMMARY OF THE ARGUMENT ....... 7

STANDARD OF REVIEW ....... 9

ARGUMENT ....... 10

- I. Mr. Harvey Presented Sufficient Evidence to Support a Prima Facie Case of Discrimination ....... 10
  - A. The District Court Applied the Wrong Legal Standard to Harvey's Declaration ....... 11
  - B. Preston Moreland is a Comparator Before and After Mr. Harvey's Discipline ....... 13
  - C. Brian Owens is a Comparator for the Termination Decision ....... 14
- II. Mr. Harvey Offered Sufficient Evidence to Support a Retaliation Claim ....... 15
  - A. Mr. Harvey Presents Direct Evidence of Retaliatory Motive ....... 15
  - B. Mr. Harvey Presents a Prima Facie Case for Retaliation ....... 17
- III. Mr. Harvey Offered Sufficient Evidence of Pretext ....... 23

A. The Record Contains Specific Evidence Disputing Lhoist's Stated Reasons as False .......... 23

B. The Suspicious Timing and Circumstances of Mr. Harvey's Termination Support an Inference of Pretext .......... 25

C. The "Disruptive" Termination Pattern Supports Further Inference of Pretext .......... 26

D. The Totality of the Evidence Provides Sufficient Evidence of Pretext .......... 27

IV. The McDonnell Douglas Framework Does Not Exhaust the Available Modes of Proof .......... 29

CONCLUSION AND PRAYER .......... 30

# TABLE OF AUTHORITIES

**Page(s)**

**Cases:**

*Ames v. Ohio Dep't of Youth Servs.*,
605 U.S. 303 (2025) ....................23, 27, 29

*Anderson v. Liberty Lobby, Inc.*,
477 U.S. 242 (1986)....................9, 11

*Bostock v. Clayton Cnty., Georgia*,
590 U.S. 644 (2020)....................17

*Brown v. Wal-Mart Stores E., L.P.*,
969 F.3d 571 (5th Cir. 2020)....................10, 18, 23

*Burton v. Freescale Semiconductor, Inc.*,
798 F.3d 222 (5th Cir. 2015) .................... 25

*Celotex Corp. v. Catrett*,
477 U.S. 317 (1986) .................... 9

*Evans v. City of Houston*,
246 F.3d 344 (5th Cir. 2001) ....................17, 18, 19, 27

*Fabela v. Socorro Indep. Sch. Dist.*,
329 F.3d 409 (5th Cir. 2003) ....................16

*Feist v. La., Dep't. of Justice, Office of the Att'y Gen.*,
730 F.3d 450 (5th Cir. 2013)....................19

*Garcia v. Prof'l Contract Servs., Inc.*,
938 F.3d 236 (5th Cir. 2019)....................18, 25

*Gee v. Principi*,
289 F.3d 342 (5th Cir. 2002).................... 23

*Godfrey v. Honeywell Int'l, Inc.*,
2022 WL 495040 (W.D. La. Feb. 17, 2022) .................... 18

*Guzman v. Allstate Assurance Co.*,
18 F.4th 157 (5th Cir. 2021).................... 9

*Hamilton v. Dallas Cnty.*,
79 F.4th 494 (5th Cir. 2023)....................12, 13

*Hill v. Houchens Food Grp., Inc.*,
No. 1:19-CV-103-KD-C, 2020 WL 2750366 (S.D. Ala. May 27, 2020) ..........12-13

*Hittle v. City of Stockton*,
145 S. Ct. 759 (2025)....................29

*Jan. v. City of Huntsville*,
74 F.4th 646 (5th Cir. 2023)....................25

*Laxton v. Gap Inc.*,
333 F.3d 572 (5th Cir.2003)....................10

*Lee v. Kansas City S. Ry. Co.*,
574 F.3d 253 (5th Cir. 2009)....................11

*Lyons v. Katy Indep. Sch. Dist.*,
964 F.3d 298 (5th Cir. 2020)....................20

*Martin v. J.A.M. Distrib. Co.*,
674 F. Supp. 2d 822 (E.D. Tex. 2009)....................16

*McDonnell Douglas Corp. v. Green*,
411 U.S. 792 (1973)....................8, 17, 26, 29

*McIncrow v. Harris County*,
878 F.2d 835 (5th Cir. 1989)....................21-22

*Muldrow v. City of St. Louis, Missouri*,
601 U.S. 346 (2024)....................12, 13

*Nall v. BNSF Ry. Co.*,
917 F.3d 335 (5th Cir. 2019)....................29

*Owens v. Circassia Pharm., Inc.*,
33 F.4th 814 (5th Cir. 2022)....................28

*Reeves v. Sanderson Plumbing Prods., Inc.*,
530 U.S. 133 (2000)....................9, 10, 23

*Royal v. CCC & R Tres Arboles, L.L.C.*,
736 F.3d 396 (5th Cir. 2013)....................10, 17, 18, 22

*Shackelford v. Deloitte & Touche, LLP*,
190 F.3d 398 (5th Cir. 1999) ........ 27

*Swanson v. Gen. Services Admin.*,
110 F.3d 1180 (5th Cir. 1997) ........ 22

*Tex. Dep't of Cmty. Affairs v. Burdine*,
450 U.S. 248 (1981) ........ 10, 24

*Turner v. Baylor Richardson Med. Ctr.*,
476 F.3d 337 (5th Cir. 2007) ........ 17

*United States v. Ramos-Delgado*,
763 F.3d 398 (5th Cir. 2014) ........ 17

*Univ. of Tex. Sw. Med. Ctr. v. Nassar*,
570 U.S. 338, 133 S. Ct. 2517, 186 L. Ed. 2d 503 (2013) ........ 17

*Watkins v. Tregre*,
997 F.3d 275 (5th Cir. 2021) ........ 10

*West v. Nabors Drilling USA, Inc.*,
330 F.3d 379 (5th Cir.2003) ........ 16

*Williams v. B R F H H Shreveport, L.L.C.*,
801 F. App'x 921 (5th Cir. 2020) ........ 21, 23

*Willis v. Cleco Corp.*,
749 F.3d 314 (5th Cir. 2014) ........ 11

**Statutes & Other Authorities:**

28 U.S.C. § 1291 ........ 1

28 U.S.C. § 1331 ........ 1

42 U.S.C. § 1981 ........ 1, 7

Fed. R. Civ. P. 56 ........ 29

Fed. R. Civ. P. 56(a) ........ 9, 23

Fed. R. Evid. 401 ........ 29

## STATEMENT OF JURISDICTION

The United States District Court for the Northern District of Texas had subject-matter jurisdiction over this action because Plaintiff-Appellant's claims arise under 42 U.S.C. § 1981, presenting a federal question. *See* 28 U.S.C. § 1331. This Court has appellate jurisdiction under 28 U.S.C. § 1291 over the appeal from the District Court's final judgment. The District Court entered its Memorandum Opinion & Order granting summary judgment and Final Judgment on February 3, 2026. ROA.2138–49. Plaintiff-Appellant timely filed a Notice of Appeal on February 5, 2026. ROA.2150–51.

## STATEMENT OF THE ISSUES

I. Is the summary judgment evidence in this case sufficient to raise disputed facts in a race discrimination case?

II. Is the summary judgment evidence sufficient in this case to raise disputed facts in a retaliation case?

## STATEMENT OF THE CASE

### A. Factual Background

Lhoist North America of Texas, L.L.C. is a subsidiary of a Belgium conglomerate that mines and distributes lime products. ROA.913. Lhoist placed only White supervisors and managers at its Celina Terminal. ROA.862. Lhoist hired Jonathan Harvey, who is Black, as a lime process operator in April 2022. ROA.862. Lhoist originally placed Mr. Harvey at the McKinney terminal, and then transferred him to the Celina terminal. ROA.862.

Praising Mr. Harvey, Lhoist ended Mr. Harvey's new-hire probationary period early because of his positive performance. ROA.862. He is a hard worker who did his job well. ROA.897. However, Lhoist's supervisors, managers, and co-workers treated Mr. Harvey differently from his White co-workers from the start. ROA.863. Lhoist assigned more tasks to Mr. Harvey than to White co-workers; allowed White employees to relax and stay hydrated while Black workers performed more work; monitored Black workers more closely; disciplined Black employees more harshly and often than non-Black employees; and denied equal training. ROA.863. Additionally, Lhoist required Black and Hispanic process operators to complete physically strenuous jobs outside of the job description, such as power-washing, but did not require this of White process operators. ROA.863, ROA.683:23-684:10.

Lhoist kept Mr. Harvey at the Celina yard under excessive supervision while assigning non-Black co-workers easier tasks with less scrutiny at customer sites. ROA.863.

On January 13, 2023, while Mr. Harvey was tending a dry lime slaker at the Celina Terminal, a White co-worker, Preston Moreland (brother of Supervisor Landys Moreland), approached Mr. Harvey and said, "Mind your damn business." ROA.679:11-15. During the altercation, Preston Moreland called Mr. Harvey a "n****r." ROA.680:14-16. Mr. Harvey immediately reported the incident to Jesse Morris, Lhoist's General Manager, and filed a complaint with Ruby Sonnenberg, Lhoist's Human Resources manager. ROA.680:5-24. Even though Lhoist knew that Preston Moreland instigated the argument, used a racial slur, and engaged in a previous verbal altercation, Lhoist gave both Mr. Harvey and Preston Moreland the same "coaching discussion"—the starting point for discipline. ROA.832. By formally "coaching," Lhoist disciplined Mr. Harvey and Preston Moreland for the first time although this was Mr. Harvey's alleged first offense and the second for Preston Moreland. ROA.864, ROA.683:9-22. After this, Preston Moreland began to regularly call Mr. Harvey names such as "snitch" and "tattletale." ROA.682:20-683:2.

On June 21, 2023, Lhoist issued Mr. Harvey a written warning for confronting a Lhoist customer who repeatedly turned off water Mr. Harvey needed to process

lime slurry. ROA.687:10-22. A written warning is more serious than a coaching discipline. ROA.864. However, Mr. Harvey acted appropriately and the warning was not justified. ROA.864.

On August 31, 2023, Mr. Harvey reported race discrimination again to Lhoist, this time to its HR hotline, informing Lhoist that two employees were "showing favoritism and racially profiling others," that a Black colleague had quit due to racial profiling, and that he felt unsafe at Lhoist. ROA.688:4-689:6, ROA.840-41. Mr. Harvey said he wanted to file a formal complaint. ROA.840-41. In a conversation with Ms. Sonnenberg on September 1, 2023, Mr. Harvey continued to report his concerns of racial profiling, nitpicking, and favoritism, and identified White employees who received preferential treatment. ROA.689:20-690:6.

Less than three weeks later, on September 18, 2023, Lhoist's General Manager Jesse Morris complained to Ms. Sonnenberg that Mr. Harvey "made a few mumbling statements that this place shows favoritism and that this is some racism bull sh*t." ROA.859. Rather than correct or prevent the racism and retaliation, Lhoist continued to discriminate and retaliate against Mr. Harvey in the subsequent weeks and months; overworking him, targeting him with power-washing duties, and unfairly dispersing work assignments. ROA.865.

Mr. Harvey reported the ongoing disparate treatment again on October 17 and 20, 2023, complaining to HR once again about race discrimination and retaliation. ROA.866. Instead of investigating, Lhoist targeted Mr. Harvey. On October 30, 2023—just ten days after Mr. Harvey's last report to HR of race discrimination—Ms. Sonnenberg sent an email to Lhoist's Director of Human Resources, Darin Wilson, as well as Lhoist's managers Quade Nye and Jesse Morris, complaining about Mr. Harvey's opposition to the discrimination and recommending a final warning against him. ROA.848-50. In her email, Ms. Sonnenberg references Mr. Harvey's complaints of extra work assignments, managements preferential treatment of others, being "slaved" around by management, and Lhoist's race and color discrimination. ROA.848-50. Mr. Wilson, Ms. Sonnenberg's superior, acknowledges that it appears Ms. Sonnenberg was complaining about Mr. Harvey complaining about race discrimination. ROA.710:23-712:9.

Ms. Sonnenberg's email also references allegations that Mr. Harvey was using his work truck to sell drugs. ROA.848-50. The next day, Lhoist subjected Mr. Harvey to a "random" drug test. ROA.848. The test came back negative. ROA.848. The allegations were baseless and false. ROA.866.

On November 3, 2023, Lhoist issued Mr. Harvey a final written warning based on an allegation that he "peeled out" of the parking lot with a company truck.

ROA.699:14-17, 866. The alleged "peeling out" incident occurred after Ms. Sonnenberg had already recommended giving Mr. Harvey a final written warning. ROA.848-50, 866. On November 8, 2023, Lhoist suspended Mr. Harvey alleging that he "peeled out" of the parking lot again, this time with his personal vehicle. ROA.866. Mr. Harvey says he did not drive aggressively. ROA.866. As previously communicated to Lhoist management, his tires were bald and his car required more acceleration to navigate the gravel road exiting the site. ROA.866, ROA.700:2-15.

Another Lhoist employee, Lawrence Griggs, observed Mr. Harvey driving away that day and said Mr. Harvey left normally and neither heard nor saw any erratic driving. ROA.866. On November 9, 2023, Lhoist terminated Mr. Harvey's employment. ROA.866, 788-89. Two Lhoist employees said that Brian Owens, a White employee, peeled out of the parking lot within weeks of Mr. Harvey's termination. ROA.692:21-694:13, 866. Not only did Lhoist not discipline Mr. Owens for peeling out, but the employees who accused Mr. Harvey of "peeling out" teased Mr. Owens for not peeling out louder. ROA.866. Then Mr. Owens went back outside and peeled out of the lot in his car a second time, without consequence. ROA.866.

Lhoist has a history of retaliating against employees who complain about race discrimination in this exact manner. The only employees Lhoist terminated in the past five years for being "disruptive" (Timothy Rogers, Tim Gooden, Kenton

Waites, and Mr. Harvey) had previously complained about race discrimination. ROA.734-97.

### B. Procedural History

On August 7, 2024, Mr. Harvey filed suit against Lhoist for discrimination and retaliation in violation of the Civil Rights Act of 1866, 42 U.S.C. § 1981 . ROA.11-41. Lhoist moved for summary judgment on November 7, 2025. ROA.338-40. Mr. Harvey filed his response on December 3, 2025 (ROA.662-63) and Lhoist filed its reply on December 17, 2025 (ROA.935-54).

On February 3, 2026, the District Court granted summary judgment on all counts. ROA.2138-49. Mr. Harvey timely appealed on February 5, 2026. ROA.2150-51.

---

## SUMMARY OF THE ARGUMENT

The District Court should not have granted summary judgment against Mr. Harvey. The District Court found that Mr. Harvey's evidence of disparate treatment was "conclusory" because it said Mr. Harvey failed to address his comparators' violation histories. Mr. Harvey did address violation histories of comparators, but the standard as applied was wrong as a matter of law. A plaintiff does not need to

affirmatively rebut every potential distinction that an employer might draw; he must only provide enough evidence to allow a reasonable jury to find disparate treatment. During the time a plaintiff has zero record of discipline, all co-workers reporting to the same supervisor and doing the same work are comparators. After receiving discipline, Mr. Harvey provided evidence of disparate treatment compared to White employees with a worse violation history than his: the record shows actual, not conclusory, evidence that Lhoist disciplined White employees less severely than Mr. Harvey for the same acts. Additionally, Mr. Harvey identifies by name other White employees who were treated better than him in assignments, discipline, supervision, and work conditions. A jury should evaluate these comparisons.

The District Court failed to recognize causation for the retaliation claim. It overlooked temporal proximity between several protected activity events and proximate adverse actions. Most of all, the District Court did not address direct evidence of retaliatory motive by a Lhoist human recourse manager complaining about Mr. Harvey's protected activity and recommending discipline.

As to circumstantial evidence under the *McDonnell Douglass* framework, the District Court failed to consider facts directly disputing Lhoist's reasons for adverse actions, the absence of reasons by Lhoist for some of the adverse actions, facts that raise inferences of pretext, and the totality of the evidence.

## STANDARD OF REVIEW

This Court reviews a district court's grant of summary judgment de novo. *Guzman v. Allstate Assurance Co.*, 18 F.4th 157, 160 (5th Cir. 2021). Summary judgment is appropriate only where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). In considering a motion for summary judgment, this Court must draw all reasonable inferences in favor of the nonmoving party, refrain from making credibility determinations or weighing the evidence, disregard all evidence favorable to the moving party that the jury is not required to believe, and give credence to the evidence favoring the nonmovant. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150-51 (2000).

"Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). The movant is entitled to summary judgment only if no rational jury could find for the nonmoving party when considering the entire record. *See id.* at 250.

## ARGUMENT

### I. Mr. Harvey Presented Sufficient Evidence to Support a Prima Facie Case of Discrimination.

Evidence of discrimination is established either through direct or circumstantial evidence. *Laxton v. Gap Inc.,* 333 F.3d 572, 578 (5th Cir.2003). Employment claims based on circumstantial evidence under the Civil Rights Act of 1866 are analyzed under the *McDonnell Douglas* burden-shifting framework. *Brown v. Wal-Mart Stores E., L.P.*, 969 F.3d 571, 577 (5th Cir. 2020). A plaintiff's prima facie case, combined with sufficient evidence that the employer's explanation is pretextual, may permit a factfinder to conclude that the employer unlawfully discriminated. *Reeves*, 530 U.S. at 148.

Under the framework, a prima facie case of discrimination requires showing: (1) membership in a protected class; (2) qualification for the position; (3) an adverse employment action; and (4) treatment less favorable than a similarly situated employee outside the protected group. *Watkins v. Tregre*, 997 F.3d 275, 282 (5th Cir. 2021); *Royal v. CCC & R Tres Arboles, L.L.C.*, 736 F.3d 396, 400 (5th Cir. 2013). "The burden of establishing a prima facie case of disparate treatment is not onerous." *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253 (1981).

Lhoist does not dispute the first three elements. ROA.2142. The District Court found Mr. Harvey did not produce evidence that he was treated less favorably

than similarly situated employees outside his protected class. ROA.2142. The District Court considered the evidence "conclusory" because it found Mr. Harvey failed to address his comparators' violation histories. ROA.2142. This holding is incorrect.

### A. The District Court Applied the Wrong Legal Standard to Harvey's Declaration.

The District Court disregarded Mr. Harvey's declaration because it "never once mentioned whether any of these comparators enjoyed more freedom of work opportunity due to having no violation histories." ROA.2132. Before Lhoist disciplined Mr. Harvey, he had no violation history, making him a comparator with everyone concerning prior violations. Nevertheless, a plaintiff need not address every conceivable distinguishing characteristic at the prima facie stage. *See Lee v. Kansas City S. Ry. Co.*, 574 F.3d 253, 261 (5th Cir. 2009) (comparators do not need "identical infractions," only a record of offenses of "comparable seriousness."). The standard is whether, viewing the evidence in the light most favorable to Mr. Harvey, a reasonable jury could find that similarly situated employees were treated differently. *Anderson*, 477 U.S. at 255. Mr. Harvey need only find a similarly situated comparator—another employee who was treated differently "under nearly identical circumstances." *Willis v. Cleco Corp.*, 749 F.3d 314, 320 (5th Cir. 2014).

Mr. Harvey names nine White employees (Endy Aguirre, Brian Butler, Travis Dearman, Preston Moreland, Brandon Adams, Russell Stanley, Ron Owen, Frank Purser, and Jeremy O'Neal) and describes in detail how each was treated better in assignments, breaks, attitude, discipline, schedules, and equipment. ROA.863. Each of these employees are White or non-Black process operators who worked at the same terminal, at the same time, and reported to the same supervisors as Mr. Harvey. ROA.863. Treated differently for a nearly identical violation is only one actionable harm; Mr. Harvey is not limited to recovering for the discipline only. *See Hamilton v. Dallas Cnty.*, 79 F.4th 494, 504 (5th Cir. 2023); *Muldrow v. City of St. Louis, Missouri*, 601 U.S. 346, 354-55 (2024) (the harm does not have to be significant, serious, or substantial and not necessarily economic).

Mr. Harvey's evidence should survive summary judgment because he testifies that Lhoist treated him worse from the beginning, before he was ever disciplined. ROA.863. The shield of "comparable violation histories" becomes a sword when a plaintiff has a clean slate. The requirement exists to prevent plaintiffs from comparing themselves to employees with materially different track records. But when a plaintiff has no violation history at all, the comparison necessarily favors him against any comparator — because no one can have a cleaner record than zero. *See Hill v. Houchens Food Grp., Inc.*, No. 1:19-CV-103-KD-C, 2020 WL 2750366, at *7

(S.D. Ala. May 27, 2020) (disciplinary histories were "not a relevant factor" when the plaintiff had a clear disciplinary record).

Mr. Harvey satisfies *Lee* with each of the comparators for disparate treatment which occurred before his first coaching discipline, including less training, more assignments, and closer scrutiny. ROA.863. Each of these acts are sufficiently harmful to satisfy *Hamilton* and *Muldrow*. *See Hamilton*, 79 F.4th at 504; *Muldrow*, 601 U.S. at 354-55.

### B. Preston Moreland is a Comparator Before and After Mr. Harvey's Discipline.

After Mr. Harvey's first discipline, the comparison continues with Preston Moreland. Preston Moreland had the same job title as Mr. Harvey and worked at the Celina Terminal at the same time as Mr. Harvey. ROA.863. He was subject to the same supervisory authority as Mr. Harvey (despite Lhoist's paper arrangement, it was Landys Moreland who in practice controlled all process operators' schedules and assignments, including his brother's). ROA.863.

Not only did Lhoist refrain from giving Preston Moreland a "coaching" for his first offense, but did coach Mr. Harvey, Lhoist escalated Mr. Harvey's discipline at every step—written warning, final written warning, termination—while Preston Moreland did not receive a written warning until his third altercation and was never terminated. ROA.864-65. That Preston Moreland had more incidents of

misconduct than Mr. Harvey but was disciplined either the same or less strictly than Mr. Harvey illustrates that Preston Moreland "enjoyed the comparative freedom *despite* having [a] similar violation histor[y]." ROA.2142. Lhoist's discipline of Preston Moreland compared to Mr. Harvey is not based upon conclusory statements and is sufficient to support a fact issue concerning a prima facie case of discrimination.

### C. Brian Owens is a Comparator for the Termination Decision.

The District Court failed to address Brian Owens as a comparator. Within weeks of Mr. Harvey's firing, two Lhoist employees, Lawrence Griggs and Endy Aguirre, observed Mr. Owens, a White employee, do the exact same thing for which Harvey was fired: peeling out of the Lhoist lot in his personal vehicle. ROA.866. The employees who made statements against Mr. Harvey actively encouraged Mr. Owens to peel out, teasing him that he could have gone faster and made a louder sound with his tires. ROA.866. Mr. Owens went back outside and peeled out a second time. ROA.866. Lhoist chose not to even give Mr. Owens any discipline. Regardless of whether Mr. Owens and Mr. Harvey had identical violation histories, that Lhoist disciplined Mr. Harvey for a certain act, and laughed it off when Mr. Owens did the exact same, is some evidence of some disparate treatment.

## II. Mr. Harvey Offered Sufficient Evidence to Support a Retaliation Claim.

### A. Mr. Harvey Presents Direct Evidence of Retaliatory Motive.

The District Court overlooked the most compelling evidence of retaliatory motive in the record. On October 20, 2023, Mr. Harvey made his last complaint of race discrimination to Lhoist's human resource department. ROA.866. Ten days later, on October 30, 2023, Ms. Sonnenberg sent her email to Mr. Wilson recommending a final written warning for Harvey. ROA.848-50. In this email, Ms. Sonnenberg complained about Mr. Harvey's protected activity, including his:

- complaints about being assigned extra work outside his job duties;
- complaints about management showing preferential treatment;
- statement that he was "slaved around by management;" and
- concerns about race and color discrimination, including that "our bosses were white and would only look out for their own."

ROA.848-50.

A week after Ms. Sonnenberg's email complaining about Mr. Harvey's protected activity Lhoist issued the final written warning, and then suspended and terminated Mr. Harvey a week after final warning. ROA.866. Ms. Sonnenberg stated, "I recommend issuing Jon [Harvey] a final warning for his conduct inability to work

effectively with others on a team. I also recommend the team review a PO job description with Jon [Harvey] so he understands his role and expectations of his job." ROA.848-50. Regarding Mr. Harvey's race discrimination claims, Ms. Sonnenberg stated, "the complaints we have received suggest that Jon [Harvey] is the issue . . . I can close this out with him and set the stage for his final." ROA.848-50.

Direct evidence is evidence that, if believed, proves the fact of discriminatory animus without inference or presumption. *West v. Nabors Drilling USA, Inc.,* 330 F.3d 379, 384 n. 3 (5th Cir.2003) (quotations omitted). *See also Fabela v. Socorro Indep. Sch. Dist.*, 329 F.3d 409, 414–15 (5th Cir. 2003). The same method of analysis is utilized for Section 1981 claims (the 1866 Act). *See Martin v. J.A.M. Distrib. Co.*, 674 F. Supp. 2d 822, 832 (E.D. Tex. 2009). Lhoist's HR manager complained about an employee's race discrimination grievances and recommended severe discipline. She said that his discrimination and retaliation complaints are not true and are the reason for labeling him as the problem, proceeding with discipline. A jury does not need to infer retaliatory motive from the email.

"Usually, in the context of a retaliation claim, the employer refrains from expressly stating that an impermissible criterion influenced his decision to expose the plaintiff to an adverse employment action, and so direct evidence of an employer's allegedly retaliatory intent is rarely available." *Fabela v. Socorro Indep. Sch. Dist.*, 329

F.3d 409, 415 (5th Cir. 2003) (abrogated on other grounds by *Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 133 S. Ct. 2517, 186 L. Ed. 2d 503 (2013)). In this case, it is readily available. If not direct evidence, the email is additional evidence of retaliatory motive and pretext. *See Evans v. City of Houston*, 246 F.3d 344, 355 (5th Cir. 2001) (causal connection prong satisfied by temporal proximity or other evidence of retaliatory intent).

### B. Mr. Harvey Presents a Prima Facie Case for Retaliation.

"A retaliation claim premised on a pretextual rationale for dismissal," meaning circumstantial evidence, "is analyzed under the *McDonnell Douglas* framework." *Royal v. CCC & R Tres Arboles, L.L.C.*, 736 F.3d 396, 400 (5th Cir. 2013). Although the District Court presented the "but for" standard as a heightened standard, this standard "is not a difficult burden to meet." ROA.2146; *United States v. Ramos-Delgado*, 763 F.3d 398, 402 (5th Cir. 2014). "This can be a sweeping standard." *Bostock v. Clayton Cnty., Georgia*, 590 U.S. 644, 656 (2020) ("Often, events have multiple but-for causes."). The but-for cause does not even have to be the primary cause. *See id.* at 665.

Like a race discrimination claim, a plaintiff must first establish a prima facie case of retaliation. *Royal*, 736 F.3d at 400 (quoting *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 348 (5th Cir. 2007)). If the plaintiff can establish a prima facie

case, the burden shifts to the defendant to provide a "legitimate non-retaliatory reason for the employment action." *Id.* The burden then shifts back to the plaintiff to "establish that the employer's stated reason is actually a pretext for unlawful retaliation." *Id.* The plaintiff demonstrated "but-for causation" at the pretext stage. *Garcia*, 938 F.3d at 243–44.

To establish a prima facie case of retaliation, a plaintiff must show: (1) protected activity; (2) an adverse employment action; and (3) a causal connection between the protected activity and adverse action. *Brown*, 969 F.3d at 577. The District Court assumed the first two elements were satisfied and dismissed only on the prima facie causal link. ROA.2145. The District Court incorrectly increased the burden for the causal link at the prima facie stage.

For retaliation, the causation standard at the prima facia stage is less stringent than the causation inquiry at the pretext stage, which requires but-for causation. *Godfrey v. Honeywell Int'l, Inc.*, 2022 WL 495040, at *6 (W.D. La. Feb. 17, 2022) (citing *Garcia v. Prof'l Contract Servs., Inc.*, 938 F.3d 236, 244 (5th Cir. 2019). *See also Evans v. City of Houston*, 246 F.3d 344, 354 (5th Cir. 2001) ("but for" is not the proper legal standard for the prima facie inquiry). It is well established that a plaintiff may show a causal link between his protected activity and an adverse employment action

by showing close timing between the two. *Id.* (citing *Feist v. La., Dep't. of Justice, Office of the Att'y Gen.*, 730 F.3d 450, 454 (5th Cir. 2013).

The temporal proximity between protected activity and discipline is sufficient at prima facie stage. Mr. Harvey engaged in protected activity when he:

a. reported on January 13, 2023, that co-worker Preston Moreland called him a racial slur (ROA.680:5-24);

b. called the Lhoist HR hotline on August 31, 2023, reporting racial profiling and requesting a formal complaint (ROA.688:4-689:6, ROA.840-41);

c. reported to HR representative Ms. Sonnenberg on September 1, 2023, his concerns about racial profiling, favoritism, and the preferential treatment given to White employees (ROA.689:20-690:6);

d. made statements around September 18, 2023, that "this place shows favoritism and that this is some racism bull sh*t" (ROA.859); and

e. reported ongoing race discrimination and retaliation to HR on October 17 and 20, 2023. (ROA.866).

Lhoist's adverse actions included:

a. giving Mr. Harvey coaching and marking it against his employment record (ROA.832);

b. treating Mr. Harvey worse after his complaint about the racial slur, by reducing his income by reducing his hours so he no longer received overtime (ROA.864);

c. becoming more and more hostile to Mr. Harvey during the next few months after the January 13, 2023 report

with Preston Moreland repeatedly calling him names like "snitch," "tattletale," and "crybaby." (ROA.682:20-683:2, ROA.864);

d. giving Mr. Harvey a final written warning on November 3, 2023 (ROA.699:14-17, 866);

e. suspending Mr. Harvey on November 8, 2023 (ROA.866); and

f. terminating Mr. Harvey on November 9, 2023 (ROA.866).

Lhoist retaliated with the coaching record within four days of his report of racism by Preston Moreland. ROA.680:5-24, ROA.832. Lhoist retaliated immediately after reporting Preston Moreland's racism by reducing his hours and pay. ROA.864. Lhoist retaliated immediately after reporting Preston Moreland's racism by making the workplace more hostile. ROA.682:20-683:2, ROA.864. The timing of the final written waning, suspension and termination all occurred within a few weeks of his latest protected activity. ROA.866.

The close temporal proximity is sufficient to support a causal connection. *See Lyons v. Katy Indep. Sch. Dist.*, 964 F.3d 298, 305 (5th Cir. 2020) (noting a six-and-a-half-week timeframe is sufficiently close). The District Court held that the causal link created by close proximity is not established when "intervening misconduct independently triggers progressive discipline." ROA.2146. However, the District

Court does not identify whether the intervening misconduct occurred between Mr. Harvey's report of race discrimination on January 13, 2023 and the coaching discipline four days later; between Mr. Harvey's reporting of race discrimination on August 31, 2023 and Lhoist treating him worse by reducing his income and becoming more hostile; between Mr. Harvey's report of race discrimination in September and October 2023 and the final written warning; between Mr. Harvey's report of race discrimination in September and October 2023 and Lhoist's suspension of Mr. Harvey; or between Mr. Harvey's report of race discrimination in September and October 2023 and Lhoist's termination of Mr. Harvey's employment.

The only intervening misconduct alleged appears to be that Mr. Harvey "peeled out." Nevertheless, the intervening issue is made further confusing or inapplicable because Ms. Sonnenberg recommended a final written warning for Mr. Harvey on October 30, 2023, ten days after his protected activity, and three days before Mr. Harvey allegedly peeled out. ROA.848-50, 788. Lhoist predetermined the discipline before the accusation of "peeling out." The District Court's failure to specify the protected activity, the adverse action, or the intervening misconduct is fundamentally problematic. *See Williams v. B R F H H Shreveport, L.L.C.*, 801 F. App'x 921, 926 (5th Cir. 2020) (quoting *McIncrow v. Harris County*, 878 F.2d 835,

835–36 (5th Cir. 1989) (an opinion must not leave its reasoning vague or simply unsaid)).

The problem arises because the District Court conflated the prima facie and pretexts stages of the case. The reason for the discipline—alleged intervening misconduct—explaining the adverse action is addressed at the pretext stage. *See Swanson v. Gen. Services Admin.*, 110 F.3d 1180, 1188 (5th Cir. 1997). *See also Royal*, 736 F.3d 396, 400 (5th Cir. 2013) (when the prima facia case is satisfied, the employee must present evidence that the employer's stated reason is pretext).

Footnote three in *Swanson*, relied upon by the District Court, stands for the proposition that timing alone is not enough. *Swanson*, 110 F.3d at 118 n.3. This does not conflict with *Swanson's* holding that reason for the adverse action—the intervening conduct—is resolved at the pretext stage. Timing alone is not enough because the prima facie case alone is not enough when the employer gives a reason, such as an intervening event.

Mr. Harvey satisfies the prima facie case for retaliation. Mr. Harvey disputes any "intervening misconduct" as the reason and presents evidence that Lhoist's excuses are pretext for covering up discrimination and retaliation. Even if the narrow temporal proximity was insufficient or cut off by intervening conduct, the Court's

failure to consider other evidence of retaliatory animus, such as the October 30, 2023, email, is erroneous. ROA.848-50; *Williams*, 801 F. App'x at 925-26.

## III. Mr. Harvey Offered Sufficient Evidence of Pretext.

"Pretext can be proven by any evidence that casts doubt on the credence of the employer's proffered justification." *Brown*, 969 F.3d at 578. "[A] factfinder may infer the ultimate fact of retaliation from the falsity of the explanation" for an adverse action. *Gee v. Principi*, 289 F.3d 342, 348 (5th Cir. 2002) (citing *Reeves*, 530 U.S. at 146–48); *see also Reeves*, 530 U.S. at 148 ("a plaintiff's prima facie case, combined with sufficient evidence to find that the employer's asserted justification is false, may permit the trier of fact to conclude that the employer unlawfully discriminated."). At the summary judgment stage, "the plaintiff need only present sufficient evidence to create a 'genuine dispute as to' whether the employer's stated reason was pretextual." *Ames v. Ohio Dep't of Youth Servs.*, 605 U.S. 303, 323 (2025) (Thomas, J. concurring) (quoting Fed. Rule Civ. Proc. 56(a)). The District Court's dismissal of Mr. Harvey's pretext evidence as "conclusory" ignored substantial evidence in the record.

### A. The Record Contains Specific Evidence Disputing Lhoist's Stated Reasons as False.

Lhoist reason for coaching is disputed by Mr. Harvey. He states that Preston Moreland was the instigator, not he, and that Preston Moreland called him a racial

epithet. ROA.679:11-680:16. Additionally, Lhoist did not issue a coaching discipline for Preston Moreland's first offense as it did for Mr. Harvey. ROA.864. This evidence creates a fact issue of pretext for the adverse action of the coaching discipline.

As for Lhoist reducing Mr. Harvey's hours and making the workplace more hostile, Lhoist does not offer a reason. Accordingly, it fails to meet its burden of production and the case must proceed to trial. See *Texas Department of Community Affairs v. Burdine,* 450 U.S. 248, 254-55 (1981). ("If the trier of fact believes the plaintiff's evidence, and if the employer is silent in the face of the presumption, the court must enter judgment for the plaintiff because no issue of fact remains in the case.").

Lhoist fired Mr. Harvey for peeling out in his personal vehicle. ROA.866. Mr. Harvey had informed Lhoist his personal vehicle had bald tires. ROA.866, ROA.700:2-15. He could not peel out with bald tires. ROA.866, ROA.700:2-15. This alleged event is ostensibly the intervening conduct referenced by the District Court. ROA.2146. Even if an intervening event could break the prima facie causal chain, it would not in this case because Ms. Sonnenberg recommended a final written warning for Mr. Harvey on October 30, 2023, for his protected activity three days before Mr. Harvey allegedly peeled out. ROA.848-50, ROA.788.

Further, Mr. Harvey and a corroborating witness dispute the allegation. ROA.866. And when a White employee, Mr. Owens did the same thing shortly thereafter, management rewarded him with laughter and encouragement rather than discipline. ROA.866. Where the alleged misconduct is disputed and where the plaintiff provides evidence that the same conduct was treated differently for employees of another race, it cannot constitute an "independent" basis for discipline that severs the causal chain. Resolving these factual disputes is the role of the jury, not of the court on summary judgment. *See Garcia v. Prof'l Contract Servs., Inc.*, 938 F.3d 236, 243 (5th Cir. 2019) (pretext established where defendant's explanation is undercut by its own conduct). Lhoist's treatment of Mr. Owens calls into doubt any discipline of Mr. Harvey because of "peeling out."

### B. The Suspicious Timing and Circumstances of Mr. Harvey's Termination Support an Inference of Pretext.

On its own, the close temporal proximity of less than two weeks between Mr. Harvey's complaint to Lhoist and Lhoist's decision to suspend Mr. Harvey "is a strong indicator of pretext." *Jan. v. City of Huntsville*, 74 F.4th 646, 654 (5th Cir. 2023) (discussing temporal proximity of fifteen days). While this Court has held that "timing standing alone is not sufficient absent other evidence of pretext," *Burton*, 798 F.3d at 240, the "combination of suspicious timing with other significant evidence of pretext can be sufficient to survive summary judgment." *Garcia v. Prof'l*

*Contract Servs., Inc.*, 938 F.3d 236, 243 (5th Cir. 2019) (citing *Burton v. Freescale Semiconductor, Inc.*, 798 F.3d 222, 240 (5th Cir. 2015)). Here, temporal proximity does not stand alone. It is combined with disputes about the credibility of Lhoist's allegations; a pattern of retaliating against employees who complain about discrimination; and management's complaints about Mr. Harvey's protected activity. This is sufficient evidence for a jury to find that Lhoist's proffered reasons for disciplining and terminating Mr. Harvey were pretextual.

### C. The "Disruptive" Termination Pattern Supports Further Inference of Pretext.

Mr. Harvey presented evidence that every employee terminated by Lhoist in the past five years for being "disruptive"—Mr. Rogers, Mr. Gooden, Mr. Harvey, and Mr. Waites—had previously complained about race discrimination. ROA.734-97. All other employees Lhoist has terminated in that time were terminated for far less subjective reasons, such as drug use or safety violations. ROA.734-97, 931. This is not coincidence; it is a pattern. The Supreme Court has recognized that "[a]n employer′s general policy and practice with respect to minority employment can be significant in assessing discriminatory animus." *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 804–05 (1973). The same principle applies here: Lhoist's pattern of using the vague "disruptive" label exclusively against employees who complained of

discrimination (i.e. employees who "disrupted" the status quo of discrimination) is powerful circumstantial evidence that the label is a pretext for retaliation.

### D. The Totality of the Evidence Provides Sufficient Evidence of Pretext

The lack of documentary evidence dated before Ms. Sonnenberg's email recommending a final warning other than coaching for opposing Preston Moreland's racism together with the statements in Ms. Sonnenberg's email tend to refute Lhoist's justifications for the discipline. *See Evans v. City of Houston,* 246 F.3d 344, 356 (5th Cir. 2001). The totality of this evidence is sufficient to support the inference that Lhoist did not actually believe that Mr. Harvey's behavior warranted discipline, including termination. *See Shackelford v. Deloitte & Touche, LLP*, 190 F.3d 398, 409 (5th Cir. 1999). Indeed, the combination of suspicious timing with other significant evidence of pretext, can be sufficient to survive summary judgment. *Id.*

The Supreme Court has recently reaffirmed that an employer's differential treatment of comparators is evidence of pretext. *Ames v. Ohio Dep't of Youth Services*, 605 U.S. 303, 322–23 (2025); *Reeves*, 530 U.S. at 143. Courts should refrain from resolving factual disputes about comparator treatment on summary judgment.

The significance of Ms. Sonnenberg's October 30, 2023 email should not be overlooked in the totality of the evidence. ROA.2136–37. The email is powerful evidence of pretext for both discrimination and retaliation claims for two reasons.

The content of the email itself is direct evidence. The email does not just note that Harvey had complaints—it characterizes his complaints as grievances *against him*, cataloguing his protected activity as among the reasons discipline is warranted. ROA.848-50.

Further evidence suggests that Ms. Sonnenberg actively sought out reasons to discipline Mr. Harvey. Once the drug results came back negative, and that no longer presented a viable reason for discipline, Lhoist accused Mr. Harvey of "peeling out" two days later. ROA.848-50, 866. Lhoist gave Mr. Harvey a final written warning for "peeling out" as a post-hoc justification for discipline Lhoist had already planned days earlier. This is evidence that the District Court did not consider.

Additionally, Ms. Sonnenberg admitted that she did not investigate Mr. Harvey's race discrimination complaints, despite acknowledging that Mr. Harvey made those complaints. ROA.727:2-728:21. An employer's failure to investigate discrimination complaints, particularly when the same HR representative then recommends discipline for the complaining employee, is evidence that the employer's stated reasons are pretextual. *Owens v. Circassia Pharm., Inc.*, 33 F.4th 814, 829 (5th Cir. 2022) (employer's investigatory choices, depending on the facts, may support inference of discrimination). The jury is entitled to ask why HR

recommended discipline against a complainant rather than investigate the complaints. This suspicious decision supports a finding of pretext.

## IV. The McDonnell Douglas Framework Does Not Exhaust the Available Modes of Proof.

Finally, even if Mr. Harvey's *McDonnell Douglas* evidence were insufficient—which it is not—the framework "is not the be-all and end-all of proving discrimination." *Nall v. BNSF Ry. Co.*, 917 F.3d 335, 352 (5th Cir. 2019) (Costa, J., concurring). "The facts necessarily will vary in [§ 1981] cases and the prima facie proof required in one case is not necessarily applicable in every respect to differing factual situations." *McDonnell Douglas*, 411 U.S. at 802 n.13; *Hittle v. City of Stockton*, 145 S. Ct. 759, 762 (2025) (Thomas, J. dissenting); *Ames*, 605 U.S. at 322 (Thomas, J. concurring).[1] The relevant question is whether, viewing all of the evidence in a light most favorable to Mr. Harvey, a reasonable factfinder could infer discrimination and retaliation. *See Ames*, 605 U.S. at 324 (Thomas, J. concurring) ("A plaintiff who cannot establish a prima facie case at the first step or pretext at the third step can still prevail under Title VII so long as his evidence raises a reasonable inference of unlawful discrimination."). That answer is yes.

---

[1] Rule 401 of the Federal Rules of Evidence provides that evidence is relevant if "it has any tendency to make a [material] fact more or less probable than it would be without the evidence." Fed. R. Evid. 401. Each relevant fact increases the probability of liability. Returning to Fed. R. Evid. 401 for minimum evidence would be a useful method of analyzing a claim under Fed. R. Civ. P. 56.

## CONCLUSION AND PRAYER

For the foregoing reasons, Mr. Harvey respectfully requests that this Court reverse the District Court's grant of summary judgment and remand for further proceedings.

Respectfully submitted,

*/s/ Brian P. Sanford*

**Brian P. Sanford**
Texas Bar No. 17630700
bsanford@sanfordfirm.com
**Elizabeth "BB" Sanford**
Texas Bar No. 24100618
esanford@sanfordfirm.com
**Emma Hoffman**
Texas Bar No. 24149862
ehoffman@sanfordfirm.com
**THE SANFORD FIRM**
2711 Hibernia Street
Dallas, TX 75204
Ph: (214) 717-6653
Fax: (214) 919-0113

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the above and foregoing was served on all lead counsel of record in accordance with the Federal Rules of Appellate Procedure on June 1, 2026, via PACER's electronic service.

*/s/ Brian P. Sanford*

## CERTIFICATE OF COMPLIANCE

In compliance with Federal Rules of Appellate Procedure 28 and 32(g) and Local Rule 5, I hereby certify that this brief contains 6156 words, excluding the portions of the brief exempted by FED. R. APP. P. 32(f). This brief has been prepared in proportionally spaced typeface using Word, Microsoft 365, Version 2604 in Equity A, 14 point font.

*/s/ Brian P. Sanford*